Delano Farms Company or Delano Farms Company v. California Table Grape Commission Council, do you call it Delano or Delano? Delano. Which? Delano. Delano. Well, I had a two out of three chance to be right. I mean, I grew up in the Valley, it's always been called Delano, but I've heard advertisements for Delano, so I don't know. Good morning, Your Honors, and may it please the Court, Brian Layton on behalf of the appellants, Delano Farms Company, Susan Neal Company, and Lucas Brothers Partnership. This is the second time we've been here. Once back in 2002-2003 where this Court reversed Judge Wanger Blow. This case was filed in 1996, and after this Court's reversal in 2003, for the first time, the California Table Grape Commission decided that their defense ought to be government speech. They had never crossed their mind before. It never crossed the mind of the federal government until belatedly in the United Foods case that was decided in 2001. Let's call it government speech. So it seems as though it's an afterthought for something that they press on. Well, it's an invention of this century, I think. Just to sue the comments on that and his dissent in the case of the Johnson case. Yes. It's an invention, so let's face it, we're looking at a new doctrine, not very old. Yes. And that was one of the preliminary points that I wanted to discuss with the Court, is at times in these types of cases that I've been doing since 1986, which is the first case regarding Wildman Brothers in L.A. at Tree Fruit, the case was decided. It was a 4-3, I mean 5-4 vote. And the courts then below, after the Wildman case was decided, decided that none of these cases that were pressing producers and shippers for assessments to pay for speech-related purposes could pass, that they all pass constitutional musters and started reversing cases. Then there was the Maverick Court, the Sixth Circuit Court of Appeals in United Foods that said, wait a minute, this is a little bit different. The primary purpose of the federal mushroom promotion program is to promote and advertise mushrooms. It's not an economic regulation that only has some side part of some advertising or promotion. And they found in that case that since the primary purpose was promotion and advertising, it is unconstitutional. The government wanted to argue government speech, but it was too little too late. So then the Johans Livestock Marketing, is what I call it, Livestock Marketing Beef case, Beef Act case, went up there, and the government preserved the issue of government speech, and the government prevailed that it was government speech. This court below in Delano Farms takes that case, and with all due respect, it was a results-oriented decision. This court does not like this case for some reason. There's been a lot of remarks during the 12 years this case has been going on that, why would our clients object to advertising something we're in business to sell? And it's a little bit deeper than that. It's philosophically, and we'd like to choose our own messenger, not the Table Grape Commission. That's been, I think, a legitimate argument for all of these, is they don't want to be, it's kind of a crammed-down proposition. Yes, I mean, philosophically, they want to do their own thing. They want to promote their own table grapes in their own way. This court found that to be a good purpose and a good reason back in 2003 when Judge Wenger got reversed below. If you had a name, the three most important things that shows this is not governmental speech, what would they be? A total lack of government control over anything the Table Grape Commission does, unlike Judge McEwen's decision in the Pistachio Commission case and unlike the Beef case. The Table Grape Commission is the first commission organized and formed by the state legislature in California under the Ketchum Act in 1967. The Table Grape Commission was basically authorized, the state imprimatur, to compel mandatory assessments for what is basically a private trade association. There's a lot of voluntary organizations, but they're voluntary. This is mandatory, but it still operates like a private trade association. In the Beef case, the court remarked over and over and over again as to how much control the secretary of the United States Department of Food and Agriculture had over the Beef Board. The Beef Board was simply an arm of the state. They had no separate autonomy. It was not a separate organization. The USDA representatives attended every meeting. They approved every budget. They approved all of the expenditures. They approved every advertisement, every promotional program. Everything about the Beef Board was government control, government control, government control. The Supreme Court went over the degree of the government control, and in order to emphasize that point, it said the degree of government control over the message funded by the checkoff, Beef checkoff, distinguishes these cases from Keller v. State Bar of California. There, the State Bar's commutative activities to which the plaintiffs objected were not prescribed by law in their general outline and not developed under official governmental supervision. Well, aren't all these members of the Great Commission, aren't they all appointed by the government? Well, this is kind of, yes, technically they're appointed by the secretary of the California Department of Food and Agriculture, who nobody gets to vote for. He's appointed by the governor. Nobody gets to vote for the secretary. He's appointed, but they're nominated. They go through votes through the six districts that grow table grapes, and whoever gets the most votes, the secretary appoints. But the commission itself hires the entire staff. The commission is just nothing but our competitors. There are producers and shippers. The commission staff is hired by the commission, our competitors. Their salaries are fixed by private parties. The secretary has never attended a California Table Grape Commission meeting, unlike pistachios. They're not even apprised of when the meetings occurred. They don't read the meeting minutes, never have. The chief of the marketing branch for all those years, Lynn Morgan, when she was deposed, says she's never seen one of their advertisements. My Public Records Act request to the secretary, to CDFA, as I call it, California Department of Food and Agriculture, asking for all of the reviews of any advertisements, promotions, et cetera, they said, we don't have any. We have none. The CDFA does not approve the budgets. They approve the budgets for the Pistachio Commission. The secretary does not approve the expenditures of the Table Grape Commission. They did with respect to the Pistachio Commission. As I said, the secretary never attends the meetings of the Table Grape Commission. It did the Pistachio Commission. The secretary does not look at, review any promotions or advertising. They reviewed all of them with respect to pistachios. They reviewed all of them with respect to the beef case. The Pistachio Commission, it authorized the secretary to have the Pistachio Commission cease and desist any activity that the secretary thought was contrary to law or was not carrying out the governmental purpose. Are we looking at the statutory setup to determine the government control, or are we looking at actual instances of control in terms of how the Supreme Court directs us? Your Honor, the easy thing in this is we're looking at both. Under the Pistachio Commission law, and virtually every other commission and board established in California, it states that the commission is to design these things, their budgets, their expenditures, where they're spending the money in, for concurrence by the secretary, by concurrence through the secretary, through the concurrence of the secretary, and also the many boards and commission meetings that I've gone to, CDFA is present. I see them all the time. I don't see them at the Table Grape Commission meetings. I haven't been to them in the last year or so. Maybe they've changed now. But in the Table Grape Commission law, there is nothing except the secretarial formal appointment power of the private parties to be members of the commission. Remember, there's still the removal power. Removal. Excuse me? Removal. Yeah. He can remove them, but he can't remove the staff. But the problem is, is it doesn't make it to the level of control and oversight and officious intermeddling that apparently the Supreme Court required for it to be government speech with respect to the Beef Board. It's just not around. They're potted plants 200 miles away from the Table Grape Commission offices. The secretary has never removed a commission member. He's appointed everyone that's been nominated by vote, the fact that he can do it. How is that controlling the message from beginning to end like the U.S. Supreme Court required and stated that they required for the Beef Act to fall under government speech? We also have to remember that the California Table Grape Commission is set up as a corporate body with the ability to sue and be sued. And here's another good one. The Beef Board is simply an arm of the secretary. Nothing of the sort is present here. Judge Wanger stated, and the commission argues, that the secretary has a right to tell the commission not to do certain things or to do certain things. The Pistachio Commission has said the secretary has that authority any time it wants. Here, it's if someone files a grievance against the commission, then the commission hears it first, and if they don't like the decision, they can appeal it to the secretary. But the interesting thing is if the secretary agrees with someone who grieved, like I did on behalf of my client, the commission gets to sue the secretary. Does that happen? It did in the California Tomato Commission case. The California Tomato Commission is set up kind of like the Pistachio Commission. The secretary ordered the commission not to do something and to do something else. They didn't like it, and they sued the secretary. And it's authorized by statute. Pistachio Commission is the same way, is that if the commission does not like what the secretary orders it to do or not do, they can turn around and sue the secretary. Now, so how is it called government speech? So that wouldn't distinguish this from the pistachios? This one's even more distinguishable than pistachio because here, the secretary is not involved in anything. He doesn't have separate. I guess I was really speaking to that narrow issue of the fact that, in effect, you can sue yourself or sue the commission. That's the same in pistachios and grapes. That's the same thing as in pistachios, but in pistachios, it gives the secretary, on its own motion, on its own authority, to order the commission to do something or not do something. The only authority under the Table Grape Commission law is if a handler or shipper doesn't like what's going on and they file a grievance against the secretary, which we did a number of years ago. The commission denied our request. We appealed it to the secretary. The secretary actually agreed with us. The commission chose not to appeal, I mean, not to sue the secretary in court, but it's hard to imagine that an entity, they call it government speech, they claim before Judge Wanger and the court below that they are a government instrumentality, they are the state, et cetera, but they're allowed to sue the secretary that supposedly can oversee them. The point, before I run out of time here, that I want to make is the court below basically discarded the entire discussion of the Supreme Court in livestock marketing, hung its hat on this court's decision in pistachios, even though this court in pistachios said it was on an abbreviated record because it came up on a preliminary injunction appeal. The court did not finally decide the issue, but it did describe, particularly pages 1010-1011 of that decision exactly, how involved in intermeddling, if you will, with the pistachio commission's activities and by statute required to is for it to be government speech, does there have to be a substantial amount of control? Or do we ignore what the Supreme Court said in livestock marketing? Judge Wanger did. He said it really doesn't have to be a lot of control as long as it's a government entity and the overarching message is set by the legislature. Here the overarching message is the California Table Grave Commission can be formed in order to promote and advertise the consumption of table grapes. The Beef Act, they said the same thing, but then the Beef Act complied with the Administrative Procedures Act, went through notice and comment and rulemaking to come up with definitive guidelines and rules and regulations as to exactly what the Beef Board could and could not do and how the Secretary is going to review here. Here we have nothing. There's no regulations except we have some general statute since 1967 that basically allows the commission to run them up whenever they do. We're not here to talk about whether they do a good job or a bad job, whether or not they're carrying out their purpose, whether or not the increase in table grape consumption is due to them or due to them and the shippers. The issue is whether or not this court is going to allow them to call a government speech when there's absolutely no government control whatsoever. It's just a private trade association with our competitors deciding what they want to spend money on. And I'm urging that. The government control is that they appoint and can remove the members of the commission, and if the government doesn't like what they're doing, it can change the composition of the commission. Yes, but that doesn't make a government speech just because the Secretary of the California Department of Food and Agriculture can remove a commission member because he doesn't like what the commission member is doing. Well, it's government speech even if people are negligent or worse when they make the speech. Speech is generally determined by the function and the person. You know, whether the person should be removed from office and nobody does anything about it or not doesn't affect that. Yes, but Judge Reinhart, what I'm trying to say is the U.S. Supreme Court in the BFAC, the secretary had the exact same authority. If that's all that was necessary, the opinion would have been two paragraphs long. It's created by the legislature. The legislature sent the overarching message, which is beef, it's what's for dinner, urged consumers to buy more beef even though they had other programs that said don't eat so much beef, eat more salads and stuff. But if that's all that was required, set up as a government entity, the secretary's power to remove the board members, it would have been a two-paragraph opinion, but they went on and on and on about government control. You know, you can strengthen an opinion by going on and showing your strongest possible case. You may not have to meet all those conditions to prevail, but when the judge writes an opinion and says look how much there is, it doesn't mean that it wouldn't be the same result with less. But, Your Honor, if that were the case, which is I think what the judge below was trying to say, I don't know how it could take him 270 pages to say that, but the Supreme Court in livestock marketing then went on to say, after they talked about all the government control, says the degree of government control over the message funded by the checkoff distinguishes these cases from Keller v. State Bar. Keller v. State Bar is where the California Supreme Court said it was government speech under the First Amendment. The U.S. Supreme Court reversed. The government doesn't appoint the members of the California Bar. That's true, but this, the Supreme Court here is saying the degree of government control over the message funded by the checkoff distinguishes these cases from Keller. Now, where, I don't see, and here's the problem that I have with, not with your question, but the idea with the court below is, where is there anything, where is there anything that, where the Supreme Court gave any indication whatsoever that the degree of control, the intermeddling by the secretary, is not an essential element of government speech? I mean, where do we, how can we come up and just kind of discard it as though it's not important as long as the secretary can remove and appoint commission members to only be replaced by another competitor? Well, if you say it's a true governmental entity, then you might not get there. I mean, you could have something that, in effect, where the government controlled the speech, where it would be government speech, but it wouldn't be a government entity, correct? Well, I don't know, if I understand correctly, I don't know how setting up a private corporation with the ability to sue and be sued. I don't know what it would be. I'm just saying they're not necessarily joined at the hip, is what I'm suggesting, the way the Supreme Court laid it out. Well, I just, I'd be, well, I personally, who practices constitutional law, would be the last one to say that what they talked about with government control was pure dictum, they didn't mean a thing about it. The government has the power to remove a number of private officials, particularly if they're regulated by SEC, to remove, you know, CEOs, et cetera, but it doesn't make what the SEC does, or the FTC in regulating whether or not something is misleading advertising in the commercial practice, it doesn't make it government speech just because you have the power to say no or the power to remove someone. Well, but this, here, you've got a corollary power to appoint, so in that case it's more like the SEC than it is like taking a private corporation and saying you must remove your president because of violation of the securities laws, which we have the authority to rule on administratively. I mean, I don't see how it's a parallel analogy. Well, no, but it's not a parallel analogy, because these are the only type of programs that exist, and they only exist in agriculture for some reason, some bizarre reason, but to think just the pro forma power to appoint and remove Ted Zininovich from the Table Grave Commission and replace him with another one of our competitors is, makes what they're doing that they never look at, never approve, never see, never discuss, they don't have any copies in their office, make it, quote, government speech, the power to appoint another private competitor and ignore the emphasis that the Supreme Court placed in government control, I don't know how this Court can do it. I mean, I can't do it. What about the Amtrak case, LeBron, what did they say, board appointed by the president in a government actor for purposes of the First Amendment? Your Honor, that case is, I beg to differ, it's totally different. There, the issue, because we know the First Amendment only constrains government and government actors from interfering with speech or regulating speech or restricting speech. The issue there. No, no, I know the issue is the opposite. Right. But they said that for purposes of the First Amendment, Amtrak was a government agency and a government actor. Correct. For purposes of applying the First Amendment in the first place. Amtrak was trying to argue that since we're set up as a private corporation, we're not government, so the First Amendment doesn't even apply to us. That was the issue. Because the First Amendment only applies one way to Amtrak. It only makes it a government actor. It only makes it a government actor for purposes of applying the First Amendment. But for the other purposes of. . . So, in other words, in their speech, as opposed to determining whether they stepped on somebody else's rights, they wouldn't be, have government speech? It wouldn't be considered government speech because they're there trying to limit what billboards can go or what signs can go. I was saying if you flipped it, here they were. The question is whether they were stepping on this private person's rights. But if you were determining whether something is government speech and they've been classified as a government entity, so if it was their speech, it wouldn't be government speech? No, the issue in that would have boiled down to, just like your sign case the last time, is content of the sign. You're not hearing my question. We know what the Amtrak case is. I'm just saying you're telling us they can't be categorized as the government or a government agency for purposes of determining some other case for government speech, only for that case. Oh, no, no, but as far as Amtrak goes, if they want to put their own signage on their own Amtrak trains, that would be government speech. You can't regulate it if they start... And why would that be government speech? Because they are government entities. Because they are actually the ones speaking. They're paying for it. They're the ones that are putting the money. Well, they pay for it by getting you to... They're the great commissioner. In other words, they've been defined by law now, in that case, as being a government entity. So if they go out and do their own speech, then they would be protected by government speech. Well, they're funded by general taxpayer revenue. That's one big thing. The only reason... They are, but they could be supported by a city tax. And taxi cab drivers could say, we don't want to pay this tax to help another form of transportation. I mean, it would be an interesting scenario, but that was not what was presented there. It was just whether they were a government actor. I mean, for purposes of... They are government actors for purposes of the First Amendment. Section 1983 can only be applied to government actors, and a lot of times it comes up in free speech issues, so you have to determine whether it's a government actor or somebody acting on LARC. I mean, Lebron is a strange case, but the only reason that this became even an issue in the Beef case is going back to what the court said in United Foods is to, you know, borrowing Thomas Jefferson from 1979, requiring to compel a man to furnish contributions of money for the propagation of opinions which he disagrees is sinful and tyrannical. They ran with that in United Foods, and even Justice Stevens agreed that if the whole purpose is to take someone's money and use it for speech-related purposes over here, it's unconstitutional, unless it's government speech. Well, how do we define government speech? And I say an essential element, an essential criteria is the substantial amount of government control and intermeddling in it, not just the appointment power, because the opinion could have been a paragraph long if that was the case. That's what I'm saying. Thank you very much. Thank you. May it please the Court, I'm Randolph Moss on behalf of the California Table Grade Commission. The judgment of the district court can and should be affirmed on three separate grounds. Let me start with government speech. Here, the speech at issue is government speech for three independent reasons, and none of those reasons turn on the degree to which the secretary of the Department of Food and Agriculture or his designee attends particular meetings or is involved in designing particular ads. First, the commission is itself a governmental entity, and therefore its speech by definition is governmental. The test, as noted a few moments ago, is defined in the Supreme Court's decision in LeBron, which dealt with the question of Amtrak, which is itself a corporate entity. Is the government for purposes of the First Amendment? And the Supreme Court said that an entity is part of the government for purposes of the First Amendment if it was created by special law for furtherance of a governmental objective and if the government retains for itself the permanent authority to appoint a majority of directors of that corporation. And all three of those criteria are satisfied here. The Ketchum Act created the Table Grade Commission. But that, you know, that is in some tension with the Barr case where, you know, Amtrak, of course, isn't a situation like the Grapes or the Barr where you have people paying in money. So how do you square just taking that little narrow language and saying, okay, government entity game over with the Barr case? Well, first of all, with respect to the source of the funding, Your Honor, I would point to the language in the Supreme Court's decision in the livestock marketing case where the Court says the source doesn't matter with respect to the funding for purposes. Now, if you're going to rely on livestock marketing, I think you really have to pay attention to what Justice Scalia said. Every word is approved by the Secretary. Every word. Is that your situation? Well, Your Honor, it is not our situation here, but — Well, that's what he focused on. He says it again and again. It isn't some extra. It's what he is saying is the heart of the case. I disagree, Your Honor. I don't think it's what he was saying. Well, Your Honor, you may disagree, but you've got a problem there. Well, I don't think so, Your Honor, for a couple of reasons. One is I don't think it's by any means the heart of the case. I mean, the heart of the case was the Court's focus on the fact that it was the legislature that defined the message and that the government maintained control. I don't know what the Supreme Court said, but you can interpret. I wanted to ask you, are you familiar with the acronym QUANGO? No, Your Honor. Well, I must say I wasn't particularly, but my law clerks drew it to my attention. And I found it was a well-known acronym, and it's defined in Wikipedia. And I want to ask you why you are not a QUANGO. Uh-oh. QUANGO is Q-U-A-N-G-O. It's a quasi-nongovernmental organization. It's an organization to which the government, according to Wikipedia, has devolved some governmental power. And it is often used with a negative implication, implying poor management and lack of accountability. And as I read about the Great Commission, I thought, my goodness, they're talking about the Great Commission. Why aren't you a QUANGO? Well, Your Honor, both because there is not poor management or lack of accountability with respect to the Great Commission. I want to come back to your question. Who are you accountable to? Accountable to the Department of Food and Agriculture and to the secretary, because the secretary has the authority to remove any member of the board. And the Supreme Court has noted, and this Court has noted, the authority to remove is the authority to control. How does the secretary review the board? How does it review the board? Yeah. How does the board account to the secretary? Well, that's the secretary's decision of how the secretary wants to go about doing that. Does it really account to him? Excuse me? Does the board account to the secretary? The board is, as a matter of law, accountable to the secretary. No. Does it account to him? I'm not sure that I entirely follow. Do you know what the word accounting means? You report to somebody. Your Honor, the commission does report to the secretary in certain respects and not in other respects. But the secretary has complete — What? Excuse me? What does it report? For example, Your Honor, there is audit authority with respect to the conduct of the affairs of the Table Group Commission. But, Your Honor, I really do want to get back to — Well, I was asking about accountability, and I wanted to understand. Your Honor, I think — I don't think you've explained it very much. Well, Your Honor, I think the key point about accountability here is the question of whether the State is accountable. Because if the State can control the conduct of the Table Group Commission, and if somebody is unhappy about something the Table Group Commission is doing, the State is accountable for that. If there's somebody out there who thought the Table Group Commission ads were inappropriate in some way, and that has never occurred, but if someone said, those ads are offensive to me, it would not be sufficient for the secretary to simply say, you know, I didn't edit that ad. He has the authority to control the ads. And if he doesn't do so, he's still accountable for them. And that's the structure of the Supreme Court's analysis in this context. But getting back to Judge McKeown's question about distinguishing Keller and why this case is different than the State bar. First of all, Keller, of course, was decided before LeBron was decided, and thus it's not surprising that the Court in Keller doesn't get into applying the LeBron standard in that context. But significantly, the State bar, only 16 of the 22 members of the State board were not appointed by any government official. So there was not the same accountability that exists under the LeBron standard. But in addition, the State didn't in any way define the messages that were at issue. The objections in the Keller case were to lobbying over things like a nuclear freeze, special education, low-income housing. And it wasn't a case like this case where the State specified, we actually want to create a commission or create a bar, and we want it to actually go out and engage in lobbying on special education, to engage in lobbying on the nuclear freeze. Here, the State created the Table Grape Commission and directed that the Table Grape Commission run ads promoting table grapes and their dietetic and healthful qualities. And that's exactly what the Table Grape Commission has done. So has any court taken LeBron and said, here's the indicia of a government entity, these match, end of case, therefore government speech, in any of these kind of commission or type cases? Your Honor, as Judge Noonan noted earlier, this is a relatively new area of the law in which the courts have been moving somewhat incrementally. I don't believe there has been a case where the Court has resolved it simply on a LeBron standard by applying LeBron, with the exception of the Court below. But here, this is a case in which we – So then if we didn't want to go there, we would then have to go further to what Judge Noonan is talking about, which is accountability and control, correct? Well, I think that if one puts aside the plaintiff's concession, that the Table Grape Commission is itself a government. And concludes that the LeBron test doesn't apply where the Supreme Court quite sweepingly articulated the test. And I should say where the Supreme Court in livestock marketing itself applied a version of the LeBron test and started its analysis by saying, here we look at the Beef Operating Committee. And there are not a majority of the members of the Beef Operating Committee that are appointed by the Secretary of the Department of Agriculture. And therefore, because a majority of the members of the Beef Operating Committee are not appointed by the Secretary of Agriculture, we go a step further and we're going to assume for purposes of the decision that the Beef Operating Committee is not a governmental entity. But implicit in that is exactly the LeBron analysis. But you're right. If the Court were to conclude that the Table Grape Commission is not itself the government, then you would go a step further. We would say the next step, even before you get to the step of the authority to control, would be the question of what exactly it is that the plaintiffs are challenging here. And the message that the plaintiffs are challenging here is not a message that was defined by the California Table Grape Commission. What they're objecting to here is a message defined by the California legislature in the Ketchum Act itself. The plaintiffs don't challenge any decision made by the Table Grape Commission. The statute itself, as indicated, specifies that the commission not only has the authority, but the duty to run ads to promote the sale of fresh grapes and their healthful properties. And we reproduced some samples of the ads at the supplemental excerpts of records 755 to 76. And that's just what they do. They promote grapes and healthful properties. They do just what the legislature directed. And there are stipulated facts in the case, which show that there's not a dispute with respect to a decision the commission has made, but rather with the decision the legislature made. The stipulated facts at excerpts of record, page 911, say that all of the ads are intended to promote the sale of fresh grapes. They don't promote other products. They don't disparage other agricultural products in California. The commission has not run political or ideological ads. The ads have been in good taste, not misleading and false. And most importantly for present purposes. Well, this is coming out of that kind of long list of the statute of the promotion of fresh grapes, blah, blah, blah. No. What I'm referring to here, Your Honor, are actually the stipulated. I understand. But the fact that it's that they're doing what the statute tells them to do as opposed to the commission is coming out of that statute that tells them to do research and dietetic and promotional healthful grapes and that. 65-500? Yeah. 65-572 and in particular subsection H. Can I ask you this? Because this is really not an issue raised by your opponent, but it certainly crossed my mind as I read your position. Where does the government get the power to go into the grape business? Could it go into the ñ I was thinking of an analogy. Suppose it decided that it should promote the sale of the various types of Coca-Cola, Royal Crown Cola, Epsa Cola, Coca-Cola. Could it create a cola commission and go into the cola business? Well, I think it might be able to do so, Your Honor, particularly if ñ Well, yes or no? Well, I think yes, Your Honor, if, as is the case here, you were dealing with a critical portion of the state's economy. I mean, you know, the Supreme Court in the Amtrak case recognized that Congress had the business of getting into the railroad business. Here you're dealing with programs that go back many years that are critical to an absolutely essential portion of the economy in this state. In 2004, I believe, $38 billion ñ Do we have a car commission? Well, we may before we know it, Your Honor. But I do think that it would be certainly a legitimate thing for the federal government to say, you know, we've got a huge problem in this country, and we can do one of two things when it comes to cars. We could continue to pump taxpayers' money into salvaging these car companies, or you know what we could do? Is we actually could get a commission together, a government commission. We're going to appoint ñ we're going to have the Secretary of Transportation appoint people to this commission. And what we want to do is try and turn around attitudes in this country about American cars and convince people they ought to be buying more American cars. Well, it seems like the beginning of the New Deal. Some of this legislation comes from New Deal. All these questions are asked. What business is it of the government to get into setting up all these committees and commissions, which President Roosevelt did? It's a Republican question. Right, yeah. The Republicans don't like this. The people and the Democrats do. But I don't think anyone is seriously questioning the authority of the government to set up a great commission. I said the authority. But, Your Honor, I think so. I've taken longer than I should getting back to your question, Judge McEwen, about the question of the actual control. Because I think that is our third argument and the third reason why we believe that the speech of the Table Great Commission is government speech. And that is because it is subject to control of the Department of Food and Agriculture. And, Judge McEwen, you asked during Mr. Layden's argument whether that question, the question of control, is a question that is defined by practice or by statute. And we believe that the Supreme Court cases make clear that what is important is the statutory authority, as well as decisions of this Court. And this Court made clear in the Paramount decision, and this is getting back to Judge Noonan's question about livestock marketing, and whether what Justice Scalia found in livestock marketing about the actual review of every word of every ad, is that required, is the question. And in livestock marketing itself, the Court said that what was present there was more than adequate. And, Judge Noonan, as you indicated earlier, this is a new area of the law, and it's an area where the courts approach it incrementally, and they decide the case in front of them based on the amount of firm. In that case, that was present, and Justice Scalia relied on those facts but said it was more than adequate. But when this Court came to the Paramount decision, where there was less, less involvement, this Court said that the question doesn't turn on whether a government employee has edited each ad or has rejected particular ads or even actively participated in the meetings. This Court said that livestock marketing does not set up, does not define a minimum. But here, I think the argument is that grapes fall below pistachios in terms of even statutory control. Well, I'm glad you raised that, Your Honor, because we think that's absolutely not the case here. And, in fact, if anything, there's greater control here than in pistachios. The courts have widely recognized that the power to remove is the power to control. That's what the Supreme Court held in the Boucher case. That's what this Court held in Silver v. the United States Postal Service. And in the Boucher case, the Supreme Court held that the Comptroller General was answerable to the Congress because the Congress could pass a joint resolution, which had to be signed by the President, to remove the Comptroller General, and that authority was enough to make the Comptroller General answerable to the President. But it's clear that that power to remove is the power to control, and that's present here. And for that reason, the Secretary can dictate what the Table Grape Commission does, because the Secretary has the authority to remove every member of the Board, which is different. Could you explain a little bit the point made by opposing counsel that when he sought the public documents bearing on the commission that the Secretary had, the Secretary more or less said, I don't have any. Is that true? Is that the situation? It's my understanding that the Secretary, I believe, my recollection is, had a document which was not produced for privilege reasons. But the Secretary did not have much, clearly. Did he claim privilege? My recollection is that there was a deliberative privilege, Your Honor, but I'm not entirely sure. But that's my recollection. Do you think there are some documents there? Well, Your Honor, I think it's not our point, and I'm not trying to say by any means that there was a stack of material there. Our point here, though, is that we're dealing with structural issues of government. And in dealing with structural issues of government, it doesn't turn the First Amendment doesn't turn on a particular management style. Yeah. We could have grapes covered by the First Amendment, pistachios not, oranges are, grapefruits aren't. Or even worse, Your Honor, grapes are covered by the First Amendment today because the Secretary attended the meeting yesterday. Grapes are not covered a week from now because the Secretary missed a meeting. I mean, that can't be. Or threw away the ads. Right, right, right. Didn't care to look at them. That can't be the way the First Amendment works here. And that's not the way the structure is. What the Supreme Court cares about here, and it's indicated in cases like this. I think I point out, you've lost your Supreme Court majority. Those people that decided that case aren't there anymore. Well, Your Honor, I mean, the opinion in livestock marketing was written by Justice Scalia. And in the dissenters in that case. Lost his majority. Well, I don't know that that's by any means true, Your Honor. Unless the new ones are going to agree with me. Well, the dissenters in the livestock marketing case was Justice Souter. And I can't recall offhand who it was who joined Justice Souter, but there was a solid majority in the livestock marketing case. But in livestock marketing, there was Southworth, where Justice Kennedy wrote the opinion. What the courts say, it's about accountability. I mean, that's what the government speech doctrine is about. It's about accountability of the government. Well, one advantage of taking your view would be we could stop hearing all these cases industry by industry. Well, that's absolutely correct. That would be an advantage. I'm not sure that's the reason to decide the case. Well, Your Honor, I do, though, think that there's a First Amendment principle in here, in that the First Amendment is not about micromanaging how the legislature or the executive branch goes about implementing a policy. It's about structural issues. And it's about whether the government controls. Let me give you a couple of examples here, Your Honor, that go to this question of this sort of day-to-day oversight and whether the government is actually involved in looking at the particular ad. If a mayor of a town, hypothetically, would have decided that there was a need to let folks know where the hospital was and called up a sign painter and said, you know, we really ought to put up a sign for the hospital. The sign painter said, glad to do it, and puts up a sign. And someone from the mayor's office doesn't go down and look at the sign before it goes up. It's still government speech. Or in Rust v. Sullivan, Your Honor, the Supreme Court held that, as it explained later in the Velasquez case, held that where you had a program, a federal program, dealing with family planning, and you had private doctors and private clinics that were implementing that program, dealing with family planning, that that was government speech. And when the doctors were talking to their patients about family planning issues, that that discussion was government speech. It wasn't a case in which there was somebody from the Department of Health and Human Services who was sitting in on the meetings with the patients, listening to the words or editing the words that were delivered. It was based on the structure. It was based on the fact that Congress had passed a statute and that the Department of Health and Human Services had implemented that statute and was thus accountable. And as the Supreme Court has noted in numerous cases, it was about the fact that if the public didn't like the message and was unhappy with it, they could throw the elected officials out and say, we want different elected officials. Scalia. Which they just did. Fisher. Excuse me? Scalia. Which they just did. Fisher. Yes. Well, Your Honor, but that is ultimately the political check, and that's where the most important basis for determining whether speech is government speech is whether that political authority exists. But with respect to the Table Grape Commission, it's not just the power to remove that exists, which was not present. Scalia. I could wind it up in a minute. Fisher. Yes, absolutely. Oh, I'm sorry, Your Honor. Just a couple more words. It was not just the power to remove that was present. There was the same grievance authority that was available in the – with respect to the Pistachio Commission. And the fact that the commission could hypothetically sue the commissioner is no response. We cite in footnote 15 of our lots of cases where government sues each other. And, in fact, just two weeks ago, the Supreme Court decided in Hawaii versus the Office of Hawaiian Affairs. So that is not by any means extraordinary. There are also CDFA policies with respect to what the ads say and the review of the ads. There's the audit authority, which is both financial and operational. So here, ultimately, there is no dispute that the CDFA has the power to control what the commission says. Plaintiff's argument is that the government has just been too passive, but that's not the test. So for these reasons, we would urge that the Court affirm the decision below. Thank you, Your Honor. Thank you, Your Honor. Very good, Your Honor. I think you're seven minutes over. We'll give you two minutes. Two minutes is final, I need. Okay. A very interesting thing that came up is that the Court said something about, you know, maybe the table grape commission violates the First Amendment, but not the pistachio commission. Well, the Supreme Court did the same thing with respect to tree fruit. It was constitutional. Mushrooms was not. It's, to me, you have to look at the statute itself to see what authority there is. They claim, well, they have the authority to audit the commission. They've never done it. They say that they have the power to remove every commission officer, I mean, every commission member, and therefore the ability to control. Control what? How does that control the advertisements? There's no provision in the statute that requires the commission whatsoever to provide any information to the secretary at all, unlike what was written in the statute with respect to the pistachio commission. The pistachio commission could not spend one penny without the secretary's concurrence. They couldn't run one ad by statute. They couldn't run one promotion program without the secretary's concurrence. It required a lengthy position paper before the crop year began as to what they were going to do. And here's the beauty of this. Section 65571, California Food and Ag Code, says the state is not liable for any acts or liabilities of the table grape commission. So on the one hand, we want to say that they control, and therefore it's government speech. On the other hand, the state says, oh, we're not responsible for nothing. Well, that's the state's general position on everything. Yes. Did the secretary claim the privilege when he asked for the documents? What the secretary claimed, and it's on page 27 of my brief, I asked for everything relating to ads, every document received from the commission regarding advertisements, promotions, lobbying activities, government relation activities, press releases, proposed drafts, all the same. CDFA responded by stating that it possessed a single document relating to possible legislative action, which CDFA considered exempt from the request, and that the department possessed bills submitted to the commission. The marketing branch of CDFA, they take every commission, sees what their budget is, and they collect a certain percentage of every commission's assessments for the marketing branch. That means federal taxpayer revenues don't pay for the marketing branch of CDFA. The commissions do. So they send them bills. Your budget is X. You owe us Y for supposed oversight. But one more thing here is they charge the commission for the governmental oversight of it? For apparently whatever, yeah, for not doing anything. Well, that could be said about a lot of things in government. Right. That's maybe one of the reasons we have this economic crash, but it doesn't make the government any less the government because they're negligent in their duties. As long as they have the responsibility, which apparently you say they are collecting fees to exercise their responsibility, and then they're not doing it. What I'm saying, what I'm saying, I'm saying it twofold. They collect money from every commission regardless of what they do. Okay. But secondly. A management fee. What? It's like their management fee. Yeah, like a management fee. They think they're bad managers. Yeah. But the position that I'm taking here is by statute the secretary is not authorized to get involved whatsoever, unless somebody files a grievance, and then they can be sued. Or they could audit their books, but they never have done it. But in the majority opinion in livestock marketing, they never mentioned LeBron. I can't find one citation of LeBron in the entire majority opinion. And secondly, at page 563 of that decision says the program is authorized in the basic message prescribed by federal statute. Okay. We have that by state statute here. And specific requirements for the promotion content are imposed by federal regulations promulgated after notice and comment. We have none of that here. There's been no APA, nothing. The secretary of agriculture, a politically accountable official, oversees the program, appoints and dismisses the key personnel, and retains absolute veto power over the advertisement's content right down to the wording. And Congress, of course, retains oversight authority, not to mention the ability to reform the program at any time. No more is required. When it says no more is required, it's not saying less can be required. It's not saying anything about whether less could be required. It said those things are enough. Yes, but they're claiming less can be required.  Less is oversight. All I'm saying is that a case that says these four points are enough is not a holding that three points wouldn't be enough also. But they're listing five points, and they say no more is required. Okay. Government control. And, by the way, in this court's case, which is cited in my reply brief, the coalition life case, Arizona versus life coalition, this court said that an essential element of government speech is the degree of control, state control. That's one case since Johans was decided where the courts addressed it. Thank you very much. Thank you both very much. That was an excellent argument on both sides. It will be an interesting case for us. And congratulations to you all. Whoever wins or loses, the court will stand in recess for the day.
judges: Reinhardt, Noonan, McKeown